[No. 8811.  Department One.  May 21, 1910.]

HENRY HOERLING et al., Appellants, v. R. L. LOWRY,
Respondent.[1]

CANCELLATION OF INSTRUMENTS—DEEDS—VALIDITY—FRAUD—EVI-
DENCE—SUFFICIENCY.  There is sufficient evidence of fraud entitling
the grantor to a cancellation of his deed, where it appears that he
was induced to make a trade of his property for 32 lots represented
to be in a city' center and worth one hundred dollars a lot, when
they were seven miles from the business center and not worth over
a dollar a lot, that the deed was not to be delivered until he had re-
ceived $2,000 on a sale of twenty of the lots to a pretended purchaser,
who paid $50 without any intention of completing the purchase, and
that delivery of the deed was wrongfully secured by the agent, who
acted for both parties in the trade and was guilty of the frauds
practiced.

Appeal from a judgment of the superior court for Lewis
county, Rice, J., entered January 26, 1910, in favor of the
defendant, after a trial on the merits before the court without
a jury, dismissing an action to cancel a deed for fraud.  Re-
versed.

Hayden & Langhorne, for appellants.
Reynolds & Stewart, for respondent.

MORRIS, J.—Appellants, prior to May 17, 1909, were the
owners of a lot in Chehalis, upon which had been erected a
fourteen-room dwelling.  This property was valued at about
$3,000, and had a rental value of about $60 per month.  On
May 17, Henry Hoerling, who with his wife was a resident of
Tacoma, went to Chehalis for the purpose of selling this
property.  He there met S. V. Lowry, a brother of the re-
spondent, who is in the real estate business, and after some
conversation is was agreed that Lowry should act as Hoer-
ling's agent in the sale of the property.  Lowry finally sug-
gested a trade of this property for thirty-two improved lots
in Sea View Addition to Port Angeles.  These lots were rep-

[1]Reported in 108 Pac. 1090.

resented as worth $100 each, cleared, close to the center of the city, and available as business property. They were owned by respondent. Hoerling, however, seemed anxious to turn his property into cash, and refused to consider a trade. Lowry then informed him that he had a purchaser for twenty of these lots at $100 each, who would pay cash, and suggested that a trade be made, Hoerling to deed the Chehalis property to the owner of the Port Angeles lots, who would then make a deed to Hoerling of the thirty-two lots, and Hoerling could then make a deed of the twenty lots to the purchaser, known to Lowry, and receive his $2,000. It was further suggested that all the deeds be deposited in a bank, and that Hoerling's deed would not be delivered until he had received the $2,000. Hoerling, not quite satisfied with this proposition, left the office and later returned with two sons-in-law, to whom the proposition was repeated, and the name of the purchaser of the twenty lots disclosed as Martin Galogaly. The proposition was then accepted, and it was agreed that the next morning the papers would be drawn up and the deal closed.

The next morning a meeting was held at S. V. Lowry's office to close up the deal, when Martin Galogaly casually drops in and, after listening to the conversation, becomes so much impressed with the future prospects of Port Angeles and the value of these particular Sea View Addition lots, that he offers to purchase twenty of them for $2,000. He had never been at Port Angeles and knew nothing about the location of these lots except as he was then and there informed. However, he expresses his willingness to close up the transaction at once, and pays down $50, the balance to be paid in five days. A deed is then drawn from Hoerling to R. L. Lowry for the Chehalis property, a deed from R. L. Lowry and E. G. Lowry to Hoerling for the Port Angeles lots, which deed seems to have been executed in blank the day before, and a deed from Hoerling to Galogaly for the twenty lots. These deeds upon their execution were deposited in a

bank, to await the payment by Galogaly to Hoerling of the $1,950 due upon the Port Angeles lots. On the 21st, S. V. Lowry presents to the bank a written order for the delivery of the deed to the Chehalis property, and upon receipt of the same has it promptly recorded. Hoerling denies that he knowingly signed such an order. The five days elapse, and the $1,950 not being paid, Hoerling returns to Chehalis, and believing that he had been defrauded out of his property, later commenced this action to cancel and set aside his deed to respondent.

It is not strange that, in an action of this character, there should be some conflict in the testimony; but the facts heretofore recited we believe to be abundantly established. Other facts we believe established, are these: Galogaly never had any intention of paying the remaining $1,950. It is apparent from his testimony that he had no money; in fact, he says he expected to borrow it; but so far as the record discloses, he does not seem to have made a very earnest effort to do so. He seemed to lose all his interest in the transaction after the execution and delivery of the deed from Hoerling to Lowry. The Port Angeles lots are situated about seven miles from the business center of the city. There is some conflict as to their situation, and values are given from fifty cents a lot to $75. R. L. Lowry purchased them about two years ago at one dollar per lot. We think from the record he would not have been justified in paying more.

We do not deem it necessary to recite the facts further, nor to refer to any authority upon which to base our conclusion that this transaction was so tainted with fraud, both in law and fact, as to render it voidable. S. V. Lowry was the agent of both parties; he represented appellants in finding a purchaser for their property; he represented his brothers in seeking to effect an advantageous trade for the Port Angeles lots; he was not in a position to give appellants the benefit of an honest discretion in advising an exchange of their property for his brothers' vacant lots; such a dual

relation on his part under the general equitable rule would make the contract influenced by him voidable. We see no facts in this record which would suggest any exception to such rule, or suggest that this is not a proper case for its application.

We might refer to other well recognized principles of law that apply to cases of this character. They will, however, readily suggest themselves to those who read the law. Appellants were entitled to the relief they sought.

The judgment is reversed and the cause remanded with instructions to enter the decree prayed for.

RUDKIN, C. J., CHADWICK, FULLERTON, and GOSE, JJ., concur.